In re CONTINENTALAFA DISPENSING COMPANY, Debtor.

Armin Tool & Mfg, Plaintiff,

v.

Continental Dispensing Company, et. al., Defendants.

Bankruptcy No. 08–45921–659.
Adversary No. 08–4233–659.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Oct. 28, 2009.

Craig A. Smith, Polsinelli Shalton Flanigan Suelthaus PC, St. Louis, MO, for Plaintiff.

John J. Hall, Lawrence E. Parres, Lewis, Rice et al., Marshall C. Turner, Husch & Eppenberger, LLC, Daniel D. Doyle, David Michael Brown, Spencer Fane Britt & Browne LLP, St. Louis, MO, for Defendants.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

KATHY A. SURRATT–STATES, Bankruptcy Judge.

The matter before the Court is Plaintiff's Complaint to Determine Priority and Validity of Lien, ContinentalAFA Dispensing Company's (hereinafter "ContinentalAFA") Answer and Affirmative Defenses to Plaintiff's Complaint to Determine Priority and Validity of Lien, and Counterclaims Against Plaintiff, Answer of Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P. (hereinafter collectively "Harbinger"), Answer of the Official Committee of Unsecured Creditors (hereinafter "Committee"), and Plaintiff's Answer to ContinentalAFA's Counterclaims. A trial in this matter was held on May 5, 2009, at which all parties appeared by counsel. Upon consideration of the record as a whole, the Court makes the following **FINDINGS OF FACT:**

On August 7, 2008, Debtors ContinentalAFA, AFA Products, Inc., and Continental Sprayers, Inc. (hereinafter collectively "Debtors") filed for relief under Chapter 11 of the Bankruptcy Code. At the time of the filing, Plaintiff Armin Tool & Manufacturing Company (hereinafter "Plaintiff") was in possession of the following equipment which belongs to Debtors: a Foamer Tube mold (hereinafter "Foamer"); component parts for a Foam Tube (hereinafter "Component Parts"); mold parts relating to a Telescoping Nozzle mold (hereinafter "Mold Parts"); and a 24–cavity STS mold (hereinafter "STS").

On September 12, 2008, Debtors filed Debtors' Motion Pursuant to 11 U.S.C. §§ 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014 for an Order Approving (a) Bid and Sale Procedures, and (B) the Sale of Certain Tangible and Intangible Assets, Including Intellectual Property, Free and Clear of All Liens, Claims, Encumbrances and Interest and the Assumption and Assignment of Certain Executory Contracts Related Thereto, and (C) Related Relief (hereinafter "Sale Motion"). There was a hearing held on Debtors' Sale Motion on September 16, 2008. On September 19, 2008, the Court entered its Order (A) Authorizing and Approving Procedures for Debtors' Proposed Auction of Certain Assets of Debtors, (B) Approving Break–Up Fee Arrangement with Proposed Buyer, (C) Establishing Date and Time for Sale Hearing, (D) Approving Form and Manner of Notices, and (E) Approving the Form of Asset Purchase Agreement and Authorizing Debtors' Execution Thereof (hereinafter "September 19, 2008 Order"). Subsequently, Debtors commenced the asset sale.

On October 1, 2008, Debtors filed a Certificate of Service which verified that parties listed among the Creditors Matrix for Debtors were served on September 23, 2008 with: (a) the September 19, 2008 Order; (b) Notice of (I) Auction, (II) Procedures, (III) Debtors' Sale of Certain Assets Free and Clear of All Liens Claims, Encumbrances, and Other Interests and (IV) Setting a Date and Time for Hearing on Proposed Auction Sale; and (c) Notice of Debtor's Assumption and Assignment of Certain Executory Contracts and Cure Amount Determination in Connection with Such Assumption and Assignment of Certain Executory Contracts. Plaintiff was among the creditors that received these notices. On October 15, 2008, the Court held a hearing on the assets subject to the Sale Motion, and Plaintiff neither ap-

peared at the hearing nor filed an objection to the Sale Motion. Later that day, the Court entered an Agreed Order Authorizing and Approving Sale and Transfer of Certain of Debtors' Assets Free and Clear Liens, Claims, Encumbrances and Interests, and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and Granting Related Relief (hereinafter "Sale Order").

Pursuant to the Sale Order, the Foamer, Component Parts, and Mold Parts were sold to MeadWestvaco Calmar, Inc. (hereinafter "Calmar"). Calmar did not buy the STS; it remains the property of Debtors but is in possession of Plaintiff. The Sale Order created a reserve account in the amount of $94,750.00, which the Sale Order stipulated was "designated by the Debtor[s] to fund any potential liability due on the Armin Industries/Armin Tool and Manufacturing lien claim." Sale Order, p. 7, ¶ 17.

On December 8, 2008, Plaintiff filed this Complaint against ContinentalAFA and Harbinger. On December 20, 2008, the Committee filed a Motion for an Order Authorizing Intervention in the Adversary Proceeding, which was granted on January 26, 2009. On February 2, 2009, the Committee filed its Answer to the Plaintiff's Complaint. On February 11, 2009, Debtors filed ContinentalAFA's Answer and Affirmative Defenses to Plaintiff's Complaint to Determine Priority and Validity of Lien, and Counterclaims Against Plaintiff. On February 13, 2009, Harbinger filed its Answer. On January 26, 2009, Plaintiff filed its Answer to Debtors' Counterclaims.

The parties have jointly stipulated that Plaintiff has billed Debtors at least $321,400.00: $189,500.00 for the manufacture of the Foamer, $25,900.00 for manufacture of the Component Parts, and at least $100,600.00 for the STS. Before the Sale Order, Debtors had already paid Plaintiff $94,750.00 for the Foamer and $50,300.00 for the STS. Following entry of the Sale Order, Calmar paid Plaintiff $4,200.00 for completion of the Foamer, leaving $90,550.00 in the reserve account created by the Sale Order. Plaintiff has received neither the balance owed of $90,550.00 for the Foamer, $25,900.00 for the Component Parts, any payment for the Mold Parts, nor $77,430.33 for the STS.

Plaintiff asserts that the Sale Order, while providing for $94,750.00 in a reserve account, did not explicitly limit the amount which Plaintiff could claim from the asset sale. As such, Plaintiff argues that its pre-petition services and possession of certain assets subject to the Sale Order entitle it to a perfected repairman's lien of $166,450.00, plus interest; $90,550.00 for the Foamer $25,900.00 for the Component Parts, and $50,000 for the Mold Parts. Plaintiff would have the sum paid upon entry of a final order. It also claims a possessory lien against the STS currently in its possession for $77,430.00. Plaintiff asks that Debtors provide this sum, plus interest, within 30 days or else abandon the STS, whose title would then vest in Plaintiff in satisfaction of the lien.

Debtors claim that Plaintiff holds only a possessory lien over the STS and a total lien claim of $222,916.16. Debtors argue that under Illinois common law, the possessory lien entitles Plaintiff solely to possession, and neither foreclosure nor sale of the chattel. As a solution, though, Debtors suggest that Plaintiff sell the STS, which Debtors allege has a market value of $500,000.00, and remit the excess sale proceeds to Debtors' estate less Plaintiff's total lien claim. Debtors also have proposed that if Plaintiff fails to sell the STS in 12 months, title to the STS should vest in Plaintiff and satisfy all lien claims. Finally, Debtors state that because due and proper notice of the asset sale was given,

and because the Sale Order contemplates the reserve account satisfying any of Plaintiff's lien claims against the assets, Plaintiff is not entitled to relief beyond the remaining balance of the reserve account.

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334 (2008) and Local Rule 81–9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (K) (2008). Venue is proper in this District under 28 U.S.C. § 1409(a) (2008).

### CONCLUSIONS OF LAW

There are two matters to be decided in this case: First, whether Plaintiff is entitled to additional proceeds from the asset sale? For reasons explained below, the answer is "no." Second, what should happen to the STS? The Court resolves the matter below.

 Despite a complicated set of facts, both questions have a relatively simple legal answer. In Illinois, "[a] common law or other possessory lien is merely the right to retain possession of certain property until the debt or claim secured thereby is satisfied." *Gaskill v. Sanders Disposal Hauling*, 249 Ill.App.3d 673, 188 Ill. Dec. 871, 619 N.E.2d 235, 238 (1993). There is no right to conversion or sale of the chattel, and surrendering possession of the asset eliminates the recourse provided for by law.

 The record reflects that Debtors properly conducted the asset sale under the law. The creditors were provided with adequate notice should any have wanted to raise an objection. Plaintiff failed to do so. Section 3M of the Sale Order entered on October 15, 2008 reads in pertinent part, "The holders of Encumbrances on or against the Purchased Assets shall have their Encumbrances attach to the cash proceeds of the Sale attributable to the property against or in which they claim a *[sic]* Encumbrance. . . ." Sale Order, p. 3–4, ¶ 3M. In specific reference to the assets over which Plaintiff claims the lien with an aggregated value of $166,450.00, the Sale Order said, ". . . a reserve account in the amount of $94,750.00 to be held in the Debtors' name outside of Agent in an account designated by the Debtors to fund *any potential liability* due on the Armin Industries/Armin Tool and Manufacturing lien claim" (emphasis added). Sale Order, p. 7, ¶ 17. The Sale Order makes clear that Plaintiff was receiving $94,750.00 to satisfy its claims against the Foamer, Component Parts, and Mold Parts. As it failed to object and has surrendered the assets, Plaintiff's outstanding claim—$166,450.00 less $94,750.00—is unsecured debt. The balance of the reserve account should be paid to Plaintiff, and its claim should be considered satisfied.

 The STS remains in Plaintiff's possession, creating a possessory lien for the agreed-upon amount of $77,430.33. This is a secured debt. Plaintiff has asserted that within 30 days, Debtors must pay the owed sum or surrender title. Plaintiff is a manufacturer and will not derive a business use from the STS. It is solely an asset whose value comes from sale, and bringing it to market is beyond Plaintiff's everyday practice. Nonetheless, Debtors have asserted that Plaintiff is free to bring the STS to market, recoup an expected sale price of $500,000.00, take out its total claim in excess of $200,000.00, and return the balance to the Debtors' estate. Debtors have not volunteered to sell the STS in furtherance of this suggested outcome, and Debtors have little incentive to reclaim the STS because its business is being dissolved.

 Neither party appears willing to invest the time and resources required to secure a buyer for the STS, yet each would like the proceeds from a sale. This leaves the Court with the following course of action: Debtors have 180 days to sell the STS, during which time the STS will remain in Plaintiff's possession, maintaining the security interest. Debtors will pay the first $77,430.33 of the proceeds to Plaintiff, satisfying the lien. Should the price fall below $77,430.33, Plaintiff would recoup the entire purchase price. After 180 days, the STS will become exclusive property of Plaintiff, which can then dispose of the asset in any manner it chooses.

By separate order, judgment will be entered accordingly.

### ORDER

Upon consideration of the record as a whole, and consistent with the Findings of Fact and Conclusions of Law entered separately in this matter,

**IT IS ORDERED THAT** the relief requested in Plaintiff's Complaint is GRANTED IN PART in that Plaintiff has a possessory lien in the STS mold in its possession in the amount of $77,430.33; and

**IT IS FURTHER ORDERED THAT** Debtors have 180 days from the date of this Order in which to sell the STS mold, during which time the STS mold will remain in the possession of Plaintiff and once the STS mold is sold, Debtors will pay the first $77,430.33 to Plaintiff, in satisfaction of Plaintiff's lien; if after 180 days, Debtors fail to sell the STS mold and pay Plaintiff for its lien, then the STS mold becomes the exclusive property of Plaintiff, to be disposed of in any manner that Plaintiff chooses; and

**IT IS FURTHER ORDERED THAT** Debtor shall pay to Plaintiff the sum of $90,550.00 from the sale proceeds that are in the reserve account pursuant to the Sale Order; and

**IT IS FURTHER ORDERED THAT** the relief requested in Plaintiff's Complaint is DENIED IN PART in that Plaintiff's remaining claims against Debtors are unsecured; and

**IT IS FURTHER ORDERED THAT** the relief requested in Debtors' Counterclaims are DENIED; and this is the final judgment and Order of the Bankruptcy Court in this case.